UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | * | CR10-40126-RAL |
| Plaintiff, | * | |
| vs. | * | OPINION AND ORDER REGARDING GOVERNMENT'S COLLECTION MOTIONS |
| DAVID BEULKE, | * | |
| Defendant. | * | |

Defendant David Beulke pleaded guilty to embezzling from his long-time employer, the 3M Corporation, in violation of 18 U.S.C. § 1341. Doc. 2; Doc. 3. On April 1, 2001, this Court sentenced Beulke to 51 months in prison and ordered Beulke to pay the amount he embezzled—$5,610,563.00—in restitution. Doc. 26; Doc. 35. Beulke liquidated assets to pay much of his restitution obligation, but he still owed $1,250,418.46 at the time of the hearing on the pending motions. Doc. 56 at Ex. A. This Court established a payment plan for restitution at the sentencing hearing under which Beulke must pay 50% of the deposits in his inmate trust account quarterly while in jail, 10% of the amount in his inmate trust account while at a Residential Reentry Center, and monthly payments of $1,000.00 once he is released. Doc. 28 at 6.

On April 4, 2012, the Government filed a Motion for Permission to Enforce Collection requesting that this Court (1) order Beulke to turn over any tax refunds received as a result of payment of restitution in 2011, as well as any future tax refunds; (2) grant the Government permission to enforce the restitution order against Beulke's 401(k) account; and (3) find that Beulke is delinquent in the payment of restitution to refer Beulke to the Treasury Offset Program

("TOP") for offset of any of Beulke's federal disbursements to go toward his restitution. Doc. 38; Doc. 39. The Government also filed a Motion for Order Pursuant to 18 U.S.C. § 3664(n) asking this Court to order Beulke to apply all of his 3M pension payments to the restitution order while he is incarcerated. Doc. 47; Doc. 48. This Court grants in part and denies in part the Government's motions.

## I. Tax Benefits

Beulke does not resist the Government's request for his surrender of any tax refunds received as a result of payment of restitution in 2011. In his brief and at the hearing, Beulke agreed that he has a duty to apply all money from income tax refunds to his criminal restitution obligation and has agreed to do so.

## II. 401(k) Account

Beulke contests the Government's request to enforce the restitution order against his 401(k) account resulting from his employment with the 3M Corporation. Doc. 44. Beulke argues that some of his deposits into the 401(k) occurred prior to his embezzlement scheme and that his wife, Linda Beulke ("Mrs. Beulke"), who sued him for divorce after he was sentenced, is entitled to half the 401(k) as part of the forthcoming property division in the divorce action. Doc. 44 at 8. This Court accordingly allowed Mrs. Beulke to participate in the hearing on the pending motions.

The Mandatory Victims Restitution Act ("MVRA") requires a sentencing court to order defendants to pay full restitution to their victims. 18. U.S.C. §§ 3663A-3664. This Court applied the MVRA in ordering Beulke to pay full restitution to 3M, even though he had negotiated directly with 3M and its insurer to reduce his repayment obligation. Among other things, the MVRA makes civil remedies for collecting unpaid fines available to the Government

for collecting unpaid restitution judgments. See 18 U.S.C. §§ 3613(f), 3664(m)(1)(A). The chief enforcement provision is set forth in § 3613(a):

> The United States may enforce a judgment imposing a fine in accordance with the practices and procedures for the enforcement of a civil judgment under Federal law or State law. Notwithstanding any other Federal law (including section 207 of the Social Security Act), a judgment imposing a fine may be enforced against all property or rights to property of the person fined . . .

Id. Section 3613(a) recognizes three types of exceptions to the enforcement of restitution orders. The first type includes several exemptions available under I.R.C. § 6334(a). 18 U.S.C. § 3613(a)(1). The second type is property exempt under the Federal Debt Collection Practices Act. 18 U.S.C. § 3613(a)(2). The third type is the wage exemption available to debtors under the Consumer Credit Protection Act ("CCPA"). 18 U.S.C. § 3613(a)(3). None of these exceptions apply to Beulke's ERISA-qualified 401(k). ERISA's anti-alienation provision does not prohibit the Government from collecting unpaid restitution from a 401(k) account. See United States v. Novak, 476 F.3d 1041, 1049 (9th Cir. 2007) (en banc) (explaining that § 3613(a) overrides ERISA's anti-alienation provision and allows the Government to "reach defendants' ERISA-covered retirement plan benefits when enforcing criminal restitution orders"); see also United States v. Irving, 452 F.3d 110, 126 (2d Cir. 2006) (holding that "U.S.C. § 3613(a) permits courts to consider ERISA protected assets in determining appropriate fines and restitution"); United States v. Miller, 588 F. Supp. 2d 789, 796 (W.D. Mich. 2008) ("This Court joins the ranks of several other federal courts . . . holding that ERISA presents no bar against enforcing restitution orders in criminal judgments by garnishing the defendant's pension plan distributions."). Thus, the Government may seize Beulke's interest in his 401(k) under the MVRA enforcement mechanisms.

3

Beulke, who is the plan participant, and Mrs. Beulke, who is a plan beneficiary, Doc. 46-1, argue that the Government cannot garnish the entire 401(k) account because Mrs. Beulke has acquired an interest in the account as a result of South Dakota marital property law, even before she is divorced from Beulke. In support of this argument, the Beulkes rely on South Dakota Codified Laws ("SDCL") § 25-4-44, which states: "When a divorce is granted, the courts may make an equitable division of the property belonging to either or both, whether the title to such property is in the name of the husband or the wife." Mrs. Beulke also cited to Bell v. Bell, 499 N.W.2d 145 (S.D. 1993), where the Supreme Court of South Dakota noted that pension plan benefits accrued during a marriage are a marital asset subject to division at divorce. Id. at 147. Mrs. Beulke argued at the hearing that under United States v. Yielding, 657 F.3d 722 (8th Cir. 2011), generally "[o]wnership interests are defined by the law of the State in which the interest arose." Id. at 729.

The Beulke's reliance on SDCL § 25-4-44, Bell, and Yielding is misplaced. State property law does not delineate Mrs. Beulke's pre-divorce property interest in Beulke's retirement plan; federal law does. "Retirement plans covered by ERISA, the species of property rights that here concerns us, are governed exclusively by federal law." Novak, 476 F.3d at 1061; see also 29 U.S.C. § 1144(a) (2006) (noting that ERISA preempts "any and all State laws insofar as they may now or hereafter relate to any employee benefit program" covered by ERISA). Federal law, not state community property law, determines whether a person has a "property or a right to property" interest in an ERISA-qualified pension plan. Novak, 476 F.3d at 1061. And ERISA "determine[s] the extent and nature of the rights a retirement plan participant holds in the plan." Id.; see also Boggs v. Boggs, 520 U.S. 833, 849-850 (1997) (noting that a Qualified Domestic Relations Order ("QDRO") and "the surviving spouse annuity provisions define the scope of a

4

nonparticipant spouse's community property interests in pension plans consistent with ERISA").

The United States Court of Appeals for the Eighth Circuit in United States v. Taylor, 338 F.3d 947 (8th Cir. 2003), rejected the argument that state property law vests a non-divorced spouse with an interest in an ERISA-qualified plan. Id. at 950. In Taylor, a husband filed for divorce from his wife of thirty years in September 1994, the IRS was granted a tax lien in May 1995, and the couple's divorce became final in July 1995. Id. at 949. The wife argued that "under Texas community property law, [she] had substantial property rights in the plan proceeds even before the divorce" was final so she could avoid the government's tax lien. Id. at 950. The Eighth Circuit rejected this argument because state "community property law does not vest [a non-divorced spouse] with an interest in the plan proceeds." Id.

Mrs. Beulke, as a non-divorced spouse, does not yet have a property interest in the ERISA-qualified pension plan. While the concept of marital property is critical to resolving the administration of estates and divorce proceedings, it will not vest in a non-divorced spouse an interest in her partner's ERISA-qualified pension plan. See Taylor, 338 F.3d at 950. What Mrs. Beulke essentially argues is that *if* she and Beulke had gotten a divorce and a state court judge had entered a QDRO with regard to the 401(k) account, then she would have an interest in the account. The prerequisite of a divorce and a QDRO have not occurred, however. Thus, her claimed property right in the 401(k) has not coalesced. See United States v. Kollintzas, 501 F.3d 796, 799 (7th Cir. 2007) (affirming the district court's order that rejected a divorcing wife's "generalized claim regarding her contributions to the marriage as insufficient to establish an interest in the Assets").

The result would be the same even if ERISA did not preempt state law because under state community property law the Government's perfected lien would apply against the entirety

5

of Beulke's 401(k). "Liens to pay restitution are treated like tax liens" and are "effective against every interest in property accorded a taxpayer by state law." Kollintzas, 501 F.3d at 802. "An order for payment of restitution becomes a lien on all property and rights to property of the defendant upon entry of judgment." Id.; see also 18 U.S.C. § 3613(c); United States v. Hosking, 567 F.3d 329, 335 (7th Cir. 2009) ("[Section] 3613 treats a restitution order under the MVRA like a tax liability. That means that any property the IRS can reach to satisfy a tax lien, a sentencing court can also reach in a restitution order."). That lien is perfected when notice of the lien is filed. 18 U.S.C. § 3613(d). Federal law determines whether the government's lien attaches to the property at issue, and "[t]he primary consideration is 'the breadth of control' the taxpayer could exercise" over the property at issue. Kollintzas, 501 F.3d at 803 (quoting Drye v. United States, 528 U.S. 49, 61 (1999)).

An illustrative case is Kollintzas, 501 F.3d 796, in which a wife initiated divorce proceedings after the Government perfected its restitution lien on the couple's property based on the husband's criminal activity. Id. at 798-99. The wife in Kollintzas argued that state property law vested her with interests in and prevented garnishment of assets, such as retirement accounts,[1] life insurance policies, and joint banking accounts. Id. Most of the assets at issue in Kollintzas were in the husband's name alone. Id. The United States Court of Appeals for the Seventh Circuit focused on whether the Government could garnish property that was held either under the husband's name alone or a joint checking account in which the husband had authority

---

[1] In Kollintzas, some assets, such as a Public Employees Retirement Fund Account and the Indiana Teachers Retirement Fund, were retirement accounts but were exempt from ERISA under the governmental plan exception. See Hightower v. Texas Hosp. Ass'n, 65 F.3d 443, 447 (5th Cir. 1995) ("Congress excluded certain plans from ERISA coverage. 29 U.S.C. Section 1003(b)(1) excluded governmental plans from ERISA coverage under Title I.") (internal citations omitted).

6

to withdraw all monies without his wife's consent. Id. The Seventh Circuit in Kollintzas held that state property law did not prevent the Government's garnishment of this property and that the wife had no vested right to half the marital property based on her pending divorce and state community property law. Id. The marital estate, the court held, was "subject to the government's previously perfected liens, which encumber the Assets to the extent they are part of the marital estate." Id. at 803. As in Kollintzas, Mrs. Beulke started the divorce action in December 2011, after the Government perfected its lien in April 2011 on Beulke's 401(k) account, so even under state community property law, any interest she may have in the 401(k) account is subject to the Government's perfected lien.

Having determined that Mrs. Beulke does not have a legal interest superseding that of the Government in Beulke's 401(k) account, this Court turns next to the extent of Beulke's interest in the 401(k) account. Although the Government has the power to reach a defendant's ERISA-qualified plan to enforce a restitution order, this power is not without limit. Novak, 476 F.3d at 1061. Collection from a defendant's ERISA plan is similar to a tax levy proceeding where the IRS "steps into the taxpayer's shoes . . . [and] acquires whatever rights the taxpayer himself possesses." Id. (quoting United States v. Nat'l Bank of Commerce, 472 U.S. 713, 725 (1985)). Applying the tax levy analysis, the United States Court of Appeals for the Ninth Circuit in Novak held that "the government can immediately garnish the corpus of a retirement plan to satisfy a MVRA judgment—rather than merely obtain post-retirement payments that otherwise would have gone to the defendant—if, but only if, the terms of the plan allow the defendant to demand a lump sum payment at the present time." Id. at 1063. Here, the terms of the 401(k) account allow Beulke to withdraw a lump sum from his 401(k) account without Mrs. Beulke's consent.

7

See Doc. 46-3; Gov. Ex. C. Thus, the Government is entitled to enforce the restitution order against the lump sum that Beulke can withdraw from his account at this time.

The terms of Beulke's plea agreement do not restrict the Government from enforcing the restitution order against his 401(k) account. In the plea agreement, Beulke "release[d] all interest in any proceeds of the mail fraud scheme." Doc. 2 at 7. The plea agreement contained additional language stating that Beulke "also agrees to liquidate and pay over to restitution all interests in any assets related to this offense that the Defendant currently owns." Doc. 2 at 10. In his deposition, Beulke testified that prior to his fraudulent activity, he deposited six percent of his 3M paycheck in his 401(k) account. Doc. 39-1 at 2. After he began embezzling money from 3M, Beulke increased the amount deposited in his 401(k) account to ten percent of his paycheck. Beulke admitted that once he started stealing money, he had more money available to put towards his 401(k) account. Doc. 39-1 at 2. Because a portion of the 401(k) is "related to [his] offense," Doc. 2 at 10, the plea agreement allows the Government to reach funds in Beulke's 401(k) account.

### III. Pension Plan Payments

The Government has filed a Motion for Order Pursuant to 18 U.S.C. § 3664(n) requiring that Beulke apply the entirety of his monthly 3M pension payments to his court-ordered restitution during his term of incarceration. Doc. 47. Beulke's pension payments from 3M are different from his 401(k) in that Beulke cannot liquidate his interest in the pension plan and demand a lump sum. If 3M received a QDRO awarding Mrs. Beulke part of Beulke's pension benefits, she would be paid her share separately from Beulke's share. Doc. 52.

As noted above, § 3613(a)(3) provides that "the provisions of § 303 of the Consumer Credit Protection Act (15 U.S.C. 1673) shall apply to enforcement of the judgment under Federal

8

law or State law." The CCPA establishes a garnishment ceiling, stating "the maximum part of the aggregate disposable earnings of an individual for any workweek which is subjected to garnishment may not exceed (1) 25 per centum of his disposable earnings for that week, or (2) the amount by which his disposable earnings for that week exceed thirty times the Federal minimum hourly wage . . . whichever is less." 15 U.S.C. § 1673(a). The CCPA defines "disposable earnings" as "that part of the earnings of any individual remaining after the deduction from those earnings of any amounts required by law to be withheld." 15 U.S.C. § 1672(b). The CCPA defines "earnings" as "compensation paid or payable for personal services, whether denominated as wages, salary, commission, bonus, or otherwise, and includes periodic payments pursuant to a pension or retirement program." 15 U.S.C. § 1672(a).

Historically, there has been a split in federal case law on whether the 25% garnishment ceiling applies to payments from pension funds. See United States v. DeCay, 620 F.3d 534, 543-44 (5th Cir. 2010) ("The district courts around the country have divided over whether monthly pension-benefit payments constitute 'earnings' under the CCPA."). A few courts have held that payments from a pension fund are not "earnings" under the CCPA and, thus, such payments can be garnished up to 100%. See, e.g., United States v. Belan, No. 2:07-X-50979, 2008 WL 2444496, at *3 (E.D. Mich. June 13, 2008) ("[O]nce passed to a retirement account or annuity in the hands of the employee, the funds in the account or annuity are not 'earnings' under the CCPA, and thus not subject to the 25% cap, even if they are distributed in periodic payments—in other words, the distributions from the fund to defendant are not 'disposable earnings' under § 303."). The United States Court of Appeals for the Fifth Circuit in DeCay, 620 F.3d 534, rejected the Belan holding and similar cases because these holdings were based on a misquoting of the statute. Id. at 544 fn.9 (noting that Belan and its progeny "mistakenly quote the statutory

9

definition of earnings as limited to 'periodic payments *to* a pension or retirement program.' We conclude that the 'pursuant to' phrase includes periodic payments *from* the pension fund to the employee if the payments are being made in accordance with the terms of the plan."). The Fifth Circuit in DeCay held that the 25% garnishment ceiling applies to payments from a pension fund to a defendant. Id. at 544 ("We find the statutory language unambiguous and hold that the United States may garnish only twenty-five percent of [the Defendant's] monthly pension benefits. The statute explicitly defines 'earnings' to include 'periodic payments made *pursuant to* a pension or retirement program.'"). Since Decay, most federal courts presented with this issue have held that pension payments cannot be completely garnished and are subject to the ceiling. See United States v. Lee, 659 F.3d 619, 622 (7th Cir. 2011) ("Given the unambiguous language of the statute, periodic payments from a pension or retirement savings plan made in accordance with its terms would be made 'pursuant to' the pension or retirement plan and therefore be subject to the 25% limitation of the CCPA."); United States v. Cunningham, No. 4:07-cr-08, 2012 WL 2086561, at *7 (S.D. Iowa June 11, 2012) (holding that the Government under the CCPA may only garnish 25% of monthly pension benefits); United States v. Whitt, No. 11-50395, 2011 WL 4062459, at *4-5 (E.D. Mich. Sept. 13, 2011) (rejecting Belan because it "materially misquoted the CCPA provision"); United States v. Taylor, No. 11-51597, 2012 WL 1309863, at *3 (E.D. Mich. Mar. 16, 2012) ("As the Government acknowledges, it is only able to garnish twenty-five percent of monthly benefits . . . ."). This Court agrees with DeCay that the 25% garnishment ceiling in § 1673(a) applies to payments from pension funds.

The Government at the hearing on this matter argued that notwithstanding the CCPA's garnishment ceiling provision, § 3664(n) entitles the Government to garnish all of Beulke's

10

monthly pension benefits during the time he is incarcerated. Doc. 48 at 1-2. Section 3664(n) provides:

> If a person obligated to provide restitution, or pay a fine, receives substantial resources from any source, including inheritance, settlement, or other judgment, during a period of incarceration, such person shall be required to apply the value of such resources to any restitution or fine still owed.

A sentencing court is entitled to use "all other available and reasonable means" to enforce a restitution order. 18 U.S.C. § 3664(m)(1)(A)(ii). One such available means is the All Writs Act, 28 U.S.C. § 1651(a), which gives federal courts discretion to "issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." Id.; see also United States v. Cunningham, No. 4:07-cr-08, 2012 WL 2086561, at *1 (S.D. Iowa June 11, 2012) (holding that "[a]lthough restitution orders are generally enforced through the mechanisms established in 18 U.S.C. § 3613 . . . courts are further authorized to enforce restitution judgments by all other available and reasonable means" such as the All Writs Act). The Government asks this Court to issue an order directing the pension plan to apply the remaining 75% exempted from Beulke's pension payments under the CCPA to satisfy his restitution obligation.

In support of its argument, the Government relies on Cunningham, 2012 WL 2086561, a similar case where the Government sought to garnish the entirety of the defendant's monthly pension payments while he was incarcerated. Id. at *6. Although the court found that 15 U.S.C. § 1673(a) precluded the government from garnishing more than 25% of the defendant's pension benefits once he is released, the court issued an order under the All Writs Act requiring that the remaining 75% of the monthly pension payments not subject to garnishment be applied to the defendant's restitution obligation during his imprisonment. Id at *7-8. The court explained that

11

because the plain text of § 3664(n) "requires an incarcerated defendant to apply the value of substantial resources received from *any source* towards outstanding restitution," the court's order under the All Writs Act was "necessary and appropriate to effectuate both the provisions of § 3664(n) and the Court's previous restitution order." Id. at 8.

The district court in United States v. McClanahan, No. 3:03-00053, 2006 WL 1455698 (S.D.W.Va. May 24, 2006) took a different view of § 3664(n), however. As it had in Cunningham, the Government in McClanahan sought garnishment of all of the defendant's monthly pension payments during his incarceration. 2006 WL 1455698, at *1-3. The court in McClanahan determined that 15 U.S.C. § 1673(a) applied to the pension payments, which limited the Government to garnishing only 25% of the defendant's pension payments. Id. Unlike the Cunningham court, however, the McClanahan court rejected the Government's argument that § 3664(n) entitled the Government to the entirety of the defendant's monthly pension payments while he was incarcerated. Id. at *4. Specifically, the court in McClanahan stated:

> After an extensive review of the existing law, the Court was unable to determine if the phrase 'substantial resources from any source' included payments from a pension. Despite the broad language of the statute, the Court finds that the statute is directed towards preventing a defendant from benefitting from the receipt of a lump sum, rather than a periodic payment from a pension. The monthly pension benefits were known at the time of the plea agreement and sentencing, and are unlike the items explicitly included under the statute. Without a clearer statutory mandate or guidance from persuasive case law, this Court will not deprive the Defendant of her entire pension. Therefore, the Court rules that 18 U.S.C. § 3664(n) does not give the Government the authority to fully garnish Defendant's pension.

Id.; see also United States v. Roush, 452 F. Supp. 2d 676, 679 (N.D. Tex. 2006) (stating that 3664(n) is triggered by a "windfall"). As in McClanahan, the Government and Beulke at the time of the plea agreement and sentencing knew of the monthly 3M pension payments, and those

12

payments were referenced in the Presentence Investigation Report's analysis of Beulke's cash flow. Neither the Government nor Beulke at the sentencing hearing objected to the payment schedule for Beulke to pay restitution, and Beulke is not at this time in default under the payment schedule.

This Court need not choose between <u>Cunningham</u> and <u>McClanahan</u> because of the discretion that § 3664(f)(3)(A) grants this Court in fashioning a restitution award. Under § 3664(f)(3)(A), this Court "*may* direct the defendant to make a single, lump-sum payment, partial payments at specified intervals, in-kind payments, or a combination of payments at specified intervals and in-kind payments." (emphasis added). This Court also has equitable power to oversee the payment plan under § 3664(f)(3)(B):

> Upon determination of the amount of restitution owed to each victim, the court shall, pursuant to section 3572, specify in the restitution order the manner in which, and the schedule according to which, the restitution is to be paid, in consideration of--
>
> (A) the financial resources and other assets of the defendant, including whether any of these assets are jointly controlled;
> (B) projected earnings and other income of the defendant; and
> (C) any financial obligations of the defendant; including obligations to dependents.

Because the Government knew of Beulke's monthly pension benefits at the time of sentencing, there does not appear to have been a "material change in the defendant's economic circumstances that might affect the defendant's ability to pay restitution," such that this Court could "on its own motion, or the motion of any party, including the victim, adjust the payment schedule, or require immediate payment in full, as the interests of justice require." 18 U.S.C. 3664(k); <u>see also</u> <u>United States v. Hawkins</u>, 392 F. Supp. 2d 757, 760 (W.D. Va. 2005) ("[T]he MVRA provides for modification of payment schedules when evidence of a material change in

the defendant's economic circumstances is presented to the sentencing court, and this would allow the government to accelerate satisfaction of a restitution order when a defendant is not in default but is capable of paying the debt at a quicker pace."). Although, at sentencing this Court was uncertain whether the parties could agree to liquidation of Beulke's 401(k) account, the closest thing to an unforeseen change in Beulke's financial situation is the pending divorce action.

At this time, Beulke is dividing the amount he receives in monthly pension payments evenly between himself and his now-estranged wife, Mrs. Beulke. Mrs. Beulke was primarily a homemaker while Beulke worked at 3M and although she does receive social security and has a small retirement account, she has limited outside income at this time. During the pendency of their divorce, Beulke has been accumulating half of the net[2] pension payments in his checking account with the other half going to Mrs. Beulke. The Beulkes desire to continue this arrangement, while the Government desires to seize as much of the monthly pension payments as this Court will allow.

Based on the discretion afforded by § 3664(f) and Beulke's payments to date on the restitution award, this Court will not disrupt the agreement between Beulke and his estranged wife to divide equally the net pension payments during the pendency of the divorce. That is, Mrs. Beulke will be permitted to continue to receive half of the net pension payments during the pendency of the divorce or until the state divorce court orders otherwise. The Government is entitled to garnish 25% of the net amount of the monthly pension because the pension plan

---

[2] This Court understands that there are withholdings from the monthly pension payments for taxes and insurance. Doc. 52. Thus, this Court refers to the amount paid to Beulke as the "net" pension payments.

payments are going to Beulke in their entirety and it is by his choice that he remits half of the net monthly pension payments to his estranged wife's separate account. Beulke then may continue to retain 25% of the net monthly pension payments.

## IV. Treasury Offset Program

The Government is asking this Court to find Beulke "delinquent" in his restitution payments and permit Beulke to be activated on the Treasury Offset Program ("TOP"). Doc. 39 at 6. The Government argues Beulke is "delinquent" for two reasons: (1) after his sentencing, and after he testified that the amount of cash he kept in his home was below $40,000.00, Mrs. Beulke found $80,000.00 in cash in the marital home and remitted that to the Government, Doc. 39 at 4; and (2) Beulke allegedly failed to turn over all "tainted" assets because he did not voluntarily sacrifice his entire 401(k) account to the Government, Doc. 39 at 7.

The TOP is a federally-administered collection program designed to help collect debts owed by an individual to either the United States or to a non-federal victim of a crime for which the United States has collection responsibility. United States v. Campbell, 245 F. App'x 505, 507 (6th Cir. 2007). "Any Federal agency that is owed by a person a past due, legally enforceable nontax debt that is over 180 days delinquent . . . shall notify the Secretary of the Treasury of all such nontax debts for purposes of administrative offset . . . ." 31 U.S.C. § 3716(c)(6) (2006). Thus, the TOP allows the Department of the Treasury to collect delinquent debts by offsetting federal disbursements owed to the debtor. See 31 U.S.C. § 3716(c)(3)(A); see also United States v. Harrison, No. 394-CR-428-D, 2007 WL 2332662, at *2 (N.D. Tex. Aug. 16, 2007). The agency may refer a delinquent debt to the TOP for offset only after giving the debtor:

> (1) written notice of the type and amount of the claim, the intention of the head of the agency to collect the claim by administrative offset, and an explanation of the rights of the debtor under this section;
> (2) an opportunity to inspect and copy the records of the agency related to the claim;
> (3) an opportunity for a review within the agency of the decision of the agency related to the claim; and
> (4) an opportunity to make a written agreement with the head of the agency to repay the amount of the claim.

31 U.S.C.A. § 3716(a)(1-4); see also United States v. Mayer, No. 04-CR-100-1-SM, 2010 WL 4916561, *1 (D.N.H. Dec. 3, 2010) (outlining prerequisites for referral to the TOP).

The Government asked this Court for an order "finding that Beulke is delinquent in the payment of restitution, and permission to refer him to the Treasury Offset Program for offset of the delinquent debt." Doc. 38 at 1. At argument on these motions, Beulke resisted the Government's motion for an order referring him to the TOP and argued that he is not delinquent based on the payment plan this Court set. But, in briefing, Beulke noted that it appears that the Government either has already referred Beulke to the TOP, or, at least, has notified it intends to refer him. Doc. 44 at 9; Doc. 44-2 at 1. On April 4, 2011, the Department of Justice sent Beulke a "Notice of Intent to Offset" ("Notice"). Doc. 44-2 at 1. The Notice stated that Beulke owed $4,387,979.23[3] and that amount was due "Immediately." Doc. 44-2 at 1. It advised Beulke that in order to avoid referral he must, within 60 days, "(1) pay his debt in full; (2) enter into a repayment program; or (3) present evidence that all or part of the criminal . . . judgment is not past due." Doc. 44-2 at 1-2. Beulke's failure to take these steps would result in his referral by the Department of Justice to the TOP. Doc. 44-2 at 1. The Notice then states "[i]f you are

---

[3] As was anticipated at the time of sentencing, Beulke paid down the amount of restitution by liquidating assets and owed $1,250,418.46 at the time of the hearings on the motions addressed in this Opinion and Order.

currently on a payment plan and you default on this payment plan, this debt may be submitted to the Department of the Treasury for inclusion in the Treasury Offset Program. You will not receive another notice from this office." Doc. 44-2 at 2.

If the Department of Justice referred Beulke to the TOP, he must exhaust administrative remedies before seeking redress in court. The TOP is an administrative procedure "established by statute and administered under implementing regulations, which provide due process to debtors against whom offset is sought." Mayer, 2010 WL 4916561, at *1. Referral to the TOP, an administrative program, is done once the head of a federal agency determines the debtor is delinquent. 31 U.S.C. § 3716(a). Restitution debtors challenging their referral to the TOP are expected to address their concerns to the referring agency before coming to court. See Mayer, 2010 WL 4916561, at *1-2 (holding that a debtor seeking a less burdensome offset must "press his request" to the collecting agency before seeking review in court); Harrison, 2007 WL 2332662, at *2 (holding that restitution debtor challenging the government's ability to collect the debt through offset must present those arguments "to the Department of Justice, not to the court"). And the Government may offset federal disbursements "so long as the statutory requirements are met." United States v. Weissenbach, No. 3:08CR172-1, 2010 WL 2246177, at *2 (W.D.N.C. June 2, 2010). Thus, Beulke should "seek administrative relief as proscribed by the statute and implementing regulations" from the Department of Justice if he has been referred to the TOP by the Government. See Mayer, 2010 WL 4916561, at *1.

If Beulke has not been referred to the TOP, then this Court declines to refer him to the TOP. In briefing, the Government cited generally to Campbell, 245 F. App'x 505, in support, where a district court granted the Government's motion to enroll a debtor in the TOP. Id. at 507. However, a court order is not a prerequisite to referring a debtor to the TOP. The extensive

17

regulatory framework governing the TOP provide ample guidance for federal agencies to refer debtors to the TOP, protect a debtor's due process, and offset their disbursements to satisfy their debt such that a court order is not required. See Mayer, 2010 WL 4916561, at *1; see also Harrison, 2007 WL 2332662, at *2 ("To the extent the court even has the authority to interfere with the government's ability to collect the restitution debt through the TOP, it should decline to exercise that authority until defendant presents his claim to the appropriate federal agency."); Weissenbach, 2010 WL 2246177, at *2 ("Congress duly promulgated a statutory system that provides for a limit to the amount that may be offset.").

## VI. Conclusion

Therefore, for good cause, it is hereby

ORDERED that the Government's Motion for Leave to Enforce Restitution (Doc. 38) and Motion for Order Pursuant to § 3664(n) (Doc. 47) are granted in part and denied in part. It is further

ORDERED that Beulke pay to the Government forthwith any income tax refund that relates in any way or arises out of his payment of restitution with any such amounts remitted to be applied to reduce the restitution obligation. It is further

ORDERED that Beulke cooperate with the Government in its garnishment, seizure, and liquidation of Beulke's 401(k) account and that the entirety of the net proceeds from the 401(k) account be applied to the court-ordered restitution. It is further

ORDERED that the Government may garnish 25% of Beulke's net monthly pension payments while Beulke is in prison, that Mrs. Beulke may continue to receive 50% of the net pension payments until the state divorce court addresses alimony and property division issues,

and that Beulke may retain the remaining 25% of the net monthly pension payments during his incarceration.

Dated September 20, 2012.

BY THE COURT:

*/s/ Roberto A. Lange*
ROBERTO A. LANGE
UNITED STATES DISTRICT JUDGE